BOWES, Judge.
Appellants, Eyster Enterprises, Warren L. Eyster, and Edward T. Smith, Jr. have taken this appeal from a judgment of the district court maintaining the defendants’ exception of prescription. For the following reasons, we affirm the judgment of the trial court.
On May 4, 1982, plaintiffs, Edward T. Smith, Jr., Warren L. Eyster, and Eyster Enterprises filed a suit entitled “Petition for Damages” against Pelican Homestead.
In their petition, plaintiffs alleged that they and Pelican entered into a loan commitment agreement, wherein Pelican of *1293 fered to lend to plaintiffs the sum of $240,-000.00, subject to a vendor’s lien and first mortgage on certain commercial property; that the commitment was reduced to writing, that Pelican breached the contract, refusing the loan, and “as a result of defendant’s breach of contract, intentional actions, negligence and breach of duties, petitioners were forced to seek financing elsewhere to prevent further loss of business opportunities and expenses.”
Pertinent to our present inquiry, the plaintiffs specifically alleged:
Shortly after the contract was entered into, defendant, without notice to petitioners and without authorization, made an inquiry to Dr. Alan Sheen, a tenant of petitioners, regarding petitioners’ general reputation, credit and his business relationship with petitioners.
An agent/employee of defendant, Robert Skinner, and/or other agents/employees, without notice or authorization from petitioners revealed the terms of the loan agreement to Dr. Sheen and requested he permit his lease be ranked lower than the new loan agreement.
Defendants notified petitioners it would not perform the contract until petitioners convinced Dr. Sheen to agree to the lower ranking.
[. . .]
On or about April 16, 1981, defendant informed petitioners it would not perform the terms of the contract.
On September 27, 1982, petitioners filed their first amending petition adding numerous individuals alleged to be employees or agents of Pelican, and alleging further that defendants “failed to use good diligence, failed to use reasonable care, and lacked good judgment and skill which ordinarily prudent men would exercise under similar circumstances.... ” To these petitions the defendant filed exceptions of no cause of action and prescription.
After a hearing on June 8, 1984, the trial court maintained the exception of no cause of action and dismissed the individual defendants. The court also maintained the defendants’ exception of no cause of action, dismissing the plaintiffs as individuals. Insofar as the suit was one in breach of contract, the only remaining parties were Eyster Enterprises and Pelican. Eyster and Smith were further given 15 days within which to amend their petition to set forth and allege a “proper cause of action in tort” against Pelican Homestead.
On June 22, 1984, plaintiff amended its petition for the second time, incorporating the individual defendants once again and adding the following:
Plaintiffs Warren L. Eyster and Edward T. Smith, Jr. were in solido borrowers with plaintiff Eyster Enterprises and entered into the contract as individuals as well as in their capacity as general and limited partners of Eyster Enterprises. (See P-1 attached to original petition).
Petitioners learned defendant, through its agents/employees, made inquiries regarding their general reputation, credit and his business relationship with petitioners on or about November 15, 1981 after a conversation with Dr. Sheen and his mother. Defendant committed said acts between October, 1980, and November 15, 1981.
In response, the defendants’ again filed exceptions of prescription and no cause of action, averring that (1) plaintiffs did not allege that the defendants made the “investigations” of plaintiffs’ reputation, etc., beyond the authority granted in the loan application and (2) that the plaintiffs knew or should have known of the alleged tort prior to one year before filing of the suit.
After a second hearing on October 3, 1984, the trial court by judgment dated October 11, 1984 overruled the exception of no cause of action, but maintained the exception of prescription and dismissed the tort portion of the suit, leaving only the action for breach of contract between Ey-ster Enterprises and Pelican. It is this judgment from which plaintiffs appeal.
At the second hearing on the exceptions, Pelican produced the testimony of R.J. Skinner, attorney for Pelican, and Robert Leeds, a senior vice-president of Pelican in charge of mortgage lending. Skinner testi *1294 fied that, as the attorney employed to determine the merchantability of the title of the property upon which the loan was to be made, in his opinion a subordination of all recorded leases of the property’s tenants would be necessary. He, himself, did not seek such subordination from the tenants, but rather notified Mr. Eyster that he (Ey-ster) would have to obtain it. He even provided Eyster with such a document. One tenant, Dr. Sheen, had problems with the subordination and met with Skinner to discuss it. This was the only contact Skinner had with Dr. Sheen, and he testified that it took place prior to the homestead’s refusal of the loan.
Mr. Leeds testified that, in October and December of 1980, he spoke with Mr. Ey-ster about the subordination; Mr. Leeds added that he was the primary, but not the sole, contact with Mr. Eyster about the loan. An employee named Alvenia White, a loan processor for Pelican, executed the loan agreement.
No other witnesses were presented. We note, at this point, that the evidence and testimony presented are admissible only upon the exception of prescription, and may not be used to decide an exception of no cause of action. C.C.P. Art. 931.
The present suit was filed on May 4, 1982. Plaintiff has alleged that he discovered defendants’ “investigation” on November 15, 1981.
It appears from the documents in the record that Eyster was aware that the terms of the loan were revealed to Dr. Sheen before the loan was refused in April, 1981. The proposed act of subordination which Mr. Eyster admitted receiving from Dr. Skinner included the amount, as well as the existence, of the loan. Skinner testified that he gave Eyster the subordination act in early October, 1980.
Additionally, it is clear that plaintiffs were aware of a credit investigation being conducted by Pelican. The commitment fee on the agreement of September 2, 1980, is designated on the agreement itself as covering, in part, a credit investigation. The original and amending petitions do not state nor do they indicate that defendants exceeded their authority. There is no evidence whatsoever to indicate there was any “investigation” beyond that of which plaintiffs were made aware in the September 2, 1980 agreement.
The trial court evidently concluded, as have we, that plaintiffs knew of the credit investigation as of the date of the commitment agreement; and that plaintiffs were aware that the terms of their loan were made known to Dr. Sheen as of October, 1980; both of which findings demonstrate with clarity that any tort action alleged by plaintiffs in this case has prescribed. This finding is not manifestly erroneous and, in fact, is supported by the record, and will not be disturbed on appeal.
Therefore, the judgment of the trial court maintaining the exception of prescription, and dismissing plaintiffs’ claim in tort against all the defendants, including the named individuals, as well as Pelican Homestead, is affirmed.
Appellants will bear all costs of this appeal.
AFFIRMED.